IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**AUBREY HOLMES**                                                                                        **PLAINTIFF**

v.                       **CASE NO: 4:09-CV-0319 SWW**

**LVNV FUNDING L.L.C.; and
HOSTO, BUCHAN, PRATER & LAWRENCE, P.L.L.C.**               **DEFENDANT**

### REPLY TO PLAINTIFFS' RESPONSE TO SEPARATE DEFENDANT HOSTO, BUCHAN, PRATER & LAWRENCE, PLLC's MOTION TO DISMISS

I.     FDCPA

A.     **The Orange Notice**

In determining whether a debt collector's practices have violated the FDCPA, courts apply the standard of the "unsophisticated debtor." *See Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002). Where there is nothing deceptive about the communication, the court must dismiss the case as a matter of law. *Taylor v. Cavalry Investment, L.L.C., 365 F.3d 572, 574-75 (7th* Cir.2004) ("[I]f it is apparent from a reading of the letter that not even 'a significant fraction of the population' would be misled by it ..., the court should reject it without requiring evidence beyond the letter itself.).

Plaintiff fails to allege or explain how the Orange Notice is false, misleading, or deceptive. First of all, in order to find a violation under FDCPA, there must be a material communication that conveys information. 15 U.S.C. § 1692a(2). In this case, no information is conveyed by the color of the notice or the staple connecting it to the summons. The color of the paper is immaterial. *See Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 755-56 (7th

Cir. 2009). To the contrary, the only information conveyed by the Orange Notice is the plain and simple words that legibly state:

PLEASE NOTE:

You have been sued. If you would like to arrange to pay the debt, please call our law firm at (800)892-1460. This may avoid the necessity of you appearing in Court or filing an Answer. When calling, please reference our file number, which is found on the top of the Court papers.

Thank you for your cooperation.

This is an attempt to collect a consumer debt and any information obtained will be used for that purpose. This communication is from a debt collector.

Rather than asking this Court to decide this case based on the information conveyed by the Orange Notice, plaintiff seeks to broaden the definition of "communication" under the FDCPA to include the color of paper and a staple.

Even assuming arguendo that the color orange and attachment to a summons and complaint by means of a staple can constitute a "communication" as defined by the FDCPA, confusion regarding the Orange Notice still requires false assumptions and speculation about a series of events that must take place after calling or not calling the telephone number provided on the Orange Notice.

Nor does the language of the Orange Notice constitute a violation of the FDCPA. The "unsophisticated consumer" standard does not allow for a cause of action based on an "ingenious misreading" of the notice. See *Peters v. General Service Bureau, Inc.*, 277 F.3d 1051, 1055 (8th Cir. 2002) (citations omitted) (holding that letter to debtor informing him that he could avoid being served with process if he voluntarily appeared was not a violation of the

FDCPA). Here, to find an inaccurate interpretation, the unsophisticated consumer would have to completely misinterpret the Orange Notice language which states "[t]his *may* avoid the necessity of you appearing in Court or filing an Answer" to mean "[t]his *will or shall* avoid the necessity of you appearing in Court or filing an Answer." In order to find a false, misleading, or deceptive statement in the Orange Notice, one is required to change its actual language. Thus, plaintiffs are engaging in an unreasonable and ingenious misreading of the Orange Notice.

When this Court evaluates whether language is deceptive under the FDCPA, it should apply an objective standard. *See Jeter v. Credit Bureau,* 760 F.2d 1168, 1175 (11th Cir. 1985) (applying the "least sophisticated consumer" test) (quoting *Wright v. Credit Bureau of Ga. Inc.,* 548 F. Supp. 591, 599 (N.D. Ga. 1982). This Court may assume, however, that the unsophisticated consumer will possess a rudimentary amount of information about the world, will read a collection notice carefully and not make "unreasonable misinterpretations". *Rivera v. Amalgamated Debt Collection Services,* 462 F. Supp. 2d 1223, 1227 (S.D. Fla. 2006); *See also Gammon v. GC Services Ltd.* Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994).

Plaintiffs seem to apply the "least sophisticated consumer" test to the Orange Notice rather than the "unsophisticated consumer" test that is used in the 8th Circuit. *See Peters v. General Service Bureau, Inc.,* 277 F.3d 1051, 1055 (C.A.8 (Neb.),2002)(applying the "unsophisticated consumer" test as adopted by the Seventh Circuit in *Gammon v. G.C. Services Ltd. Partnership,* 27 F.3d 1254, 1257 (7th Cir.1994). In *Gammon v. GC Services Ltd.* Partnership, 27 F.3d 1254, 1257 (7th Cir. 1994), the Court contrasted the "least sophisticated consumer" standard from the "unsophisticated consumer." A literal interpretation of the "least sophisticated consumer" is not merely "below average", but the

very last rung on the sophistication ladder. *Id.* Stated another way, the "least sophisticated consumer" is the single most unsophisticated person who exists, which means that he or she cannot even read. If the Plaintiff's "least sophisticated consumer" test is followed, then all communications from a debt collector would be deemed confusing and violative of the FDCPA. Therefore, to avoid such a misinterpretation of the purpose and meaning of the FDCPA, courts have applied a sensible interpretation to protect debt collectors against liability for unreasonable misinterpretations of collection notices. *Id. See also Taylor v. Perrin, Landry, deLauney & Durand*, 103 F. 3d 1232, 1236 (5th Cir. 1997). The FDCPA does not extend to every bizarre or idiosyncratic interpretation of a collection letter, only to a reasonable interpretation by an unsophisticated consumer. *See Peters,* supra at 1055..

Plaintiffs' contention regarding the language in the Orange Notice is clearly a misinterpretation of its language. Likewise, Plaintiffs' contention regarding the color of the paper and the fact that it was stapled to a pleading is a bizarre and idiosyncratic interpretation. Because there is no set of facts under which the Plaintiffs can show that, through the eyes of an "unsophisticated consumer," the language quoted of the Orange Notice is reasonably capable of more than one interpretation, one of which being inaccurate, Defendant's Motion to Dismiss regarding Plaintiffs' FDCPA claims should be granted.

### B. The Summons and Complaint

Hosto's alleged violations of the FDCPA relating to the Summons and Complaint stem solely from the mere act of filing the Underlying Action. See Amended Complaint, Document 7 at paragraphs 42 through 45. Thus, Plaintiff's arguments regarding the ability of the contents of the Summons and Complaint to give rise to a violation of the FDCPA confuses the

issue presented to this Court. Moreover, Plaintiff oversimplifies the issue by relying on Supreme Court case of *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489, 131 L.Ed.2d 395. *Heintz* involves a question of whether the FDCPA applies to attorney debt collectors. *Id.* In *Heintz*, the attorney for the bank sent correspondence to the debtor while the lawsuit was being litigated that included the cost of insurance bought by the bank as part of the balance due on a defaulted car loan. *Id.* The debtor sued, claiming that the bank was not entitled to these insurance costs and that the communication was misleading. *Id.* Here, Hosto does not dispute its status as a "debt collector" under the FDCPA. While it is true that the *Heintz* court recognizes that certain actions and communications taken during the course of litigation by attorneys can be found violative of the act, Plaintiff attempts to include the mere representation of a client in its right to file suit over a disputed debt as actionable conduct. *Heintz* never addresses the issue of whether a legal action constitutes a "communication" within the meaning of the act. In fact, the Supreme Court never addresses what activities or communications may subject litigators to liability. However, what the Supreme Court does recognize is that the mere filing of a lawsuit would not be actionable conduct of an attorney when it states:

> . . . we do not see how the fact that a lawsuit turns out ultimately to be unsuccessful could, by itself, make the bringing of it an "action that cannot legally be taken."

*Id* at 295-296. Here, Hosto is being sued for representing a party who is exercising its legal right to pursue a lawsuit involving a dispute about whether or not a debt was paid. Plaintiff's argument suggests that an attorney has a duty to believe an opposing party's side of the dispute over his or her own client. Even if LVNV knew that the debt was not owed and communicated to Hosto that the debt had been settled, Plaintiff fails to make this claim as no

such allegations are contained in her Amended Complaint. Allegations of facts that merely make defendants liability plausible, possible or consistent with defendant's liability are insufficient to state a claim. *Bell Atlantic Corp v. Twombly*, 550 U.S. 554, 555 (2007). Furthermore, even if LVNV's allegations in the Underlying Action regarding the debt are false, the FDCPA imposes no liability upon attorneys on the sole basis of false, misleading, or deceptive representations of their clients. *See Etapa v. Asset Acceptance Corporation*, 373 F. Supp. 2d 687, 691 (E.D. Kentucky 2004) (holding that absolute witness immunity bars claims based upon false statements by collector in bringing underlying collection action and that allegedly false statement was not attributable to the attorney).

Harmful effects could result from an interpretation of the FDCPA that subjects attorneys to liability for representing client's rights in filing a lawsuit. *See Medialdea v. Law office of Evan L. Loeffler, PLLC*, 2009 WL 1767185 (W.D. Wash)(refusing to apply FDCPA to mere filing of complaint, recognizing a "harmfully anomalous result" of allowing § 1692(e)(2) to apply to attorneys representing debt collectors because any lawyer who requests a certain sum that is either decreased or denied by a court may later be falsely sued for representing the character or amount of the debt); *Cisneros v. Neuheisel Law Firm, P.C.*, 2008 WL 65608 (D. Ariz)(recognizing that even after *Heintz* the FDCPA application to a complaint is "far from clear")(citing *Beler v. Blatt, Hasenmiller, Leibsker& Moore, LLC*, 480 F.3d 470).. Recognizing this risk, the Eleventh Circuit has refused to apply the FDCPA to judicial proceedings with respect to "initial communications" under § 1692g. *See Vega v. McKay*, 351 F.3d 1334, 1337 (11th Cir. 2003)(citing *McKnight v. Benitez*, 176 F.Supp. 2d

1301, 1308 (M.D. Fla. 2001)(noting that the purpose of the FDCPA is to "curb abusive debt collection practices, not legal actions").

Plaintiff cites several cases to support her argument that a legal action filed by an attorney on behalf of a client in and of itself constitutes a violation of the FDCPA. None of the cases extend the FDCPA in a manner that supports Plaintiff's argument. For instance, in *Gionis v. Javitch, Block & Rathbone*, the violations found by the court were in relation to the contents of affidavits attached to the complaint that contained threats and statements that could confuse the least sophisticated consumer. 405 F. Supp. 2d 856 (S.D. Ohio 2005). The mere filing of the summons and complaint in *Gionis* did not violate the FDCPA. *Id.; See also Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008)(holding that summons and complaint are not considered "initial communications" subject to the FDCPA). Although the Eastern District of Missouri found that the "litigation immunity" does not protect a creditor in connection to statements made in a judicial proceeding under the FDCPA in *Eckert v. LVNV Funding LLC*, the decision is inapplicable to this case, because it does not involve the creditor's attorney as a defendant. *Eckert v. LVNV Funding LLC*, 2009 WL 2253518 (E.D. Mo.). *Eckert* does not stand for the principle that an attorney can be liable for representing a client in the filing of a lawsuit that alleges a disputed debt. *Id.*

Plaintiff's position regarding the Summons and Complaint in the Underlying Action flies in the face of the basic principles of practicing law. The FDCPA does not render unlawful the mere representation of a creditor exercising its legal right to file a lawsuit over a disputed debt.

**II.     ADTPA**

Likewise, Plaintiffs' claims under the Arkansas Deceptive Trade Practices Act must also be dismissed. Although Plaintiffs seek to distinguish *Preston v. Stoops*, 373 Ark. 591, __ S.W. 3d ___ (Ark. 2008), by arguing that the issue in *Preston v. Stoops* was the unauthorized practice of law, the Court's holding was very clear when it stated:

> The suggestion that the practice of law can be regulated by an Act of the General Assembly is without merit. Oversight and control of the practice of law is under the exclusive authority of the judiciary. Under Ark. Const. amend. 28, "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law ." That responsibility could not be discharged if it were dependent upon or controlled by statutes enacted by the General Assembly. *See In re Supreme Court License Fees*, 251 Ark. 800, 483 S.W.2d 174 (1972). Further, any action by the General Assembly to control the practice of law would be a violation of the separation-of-powers doctrine. *See* Ark. Const. art. 4, §§ 1 & 2. We affirm the circuit court's finding that the ADTPA does not apply to the practice of law.

*Preston v. Stoops*, 373 Ark. 591, -- S.W.3d ---- (Ark. 2008). Plaintiffs' ADTPA claims must also be dismissed.

Moreover, Plaintiffs cannot avoid the bar of Ark. Code Ann. § 16-22-310 which grants attorneys immunity from claims made by parties not in privity with them on any claim except for intentional misrepresentation or fraud. Under this statute, an attorney may not be sued by a third party for his non-fraudulent acts committed during the course of his representation of his client because he was not in privity with the third party. *Nielsen v. Berger-Nielsen*, 347 Ark. 996, 1007, 69 S.W.3d 414, 420 (Ark. 2002). Plaintiffs argue that their claims are not barred by §310 by attempting to argue that Hosto committed an intentional tort. However, an intentional tort by Hosto was never pled by Plaintiff. Furthermore, the common law "litigation privilege" applies. Thus, as set forth in Defendant's initial pleadings, Plaintiffs' claims for violation of the ADTPA must be dismissed.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: bbrownstein@wlj.com
ktucker@wlj.com
clauck@wlj.com

By */s/ Chester H. Lauck, III*
Bettina E. Brownstein (85019)
Kimberly Wood Tucker (83175)
Chester H. Lauck, III (99107)
Attorneys for Hosto, Buchan, Prater &
Lawrence P.L.L.C.

CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2009, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Joel G. Hargis, joel@crawleydeloache.com

*/s/ Chester H. Lauck, III*
Chester H. Lauck, III (99107)
Attorney for Hosto, Buchan, Lawrence & Prater, PLLC
WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, Arkansas 72201-3699
(501) 371-0808
FAX: (501) 376-9442
E-MAIL: clauck@wlj.com